```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

JAMES DIGHTON,                    )
                                  )
          Plaintiff,              )
                                  )
v.                                )  Case No. CIV-19-105-KEW
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
          Defendant.              )
```

## OPINION AND ORDER

Plaintiff James Dighton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 37 years old at the time of the ALJ's decision.

Claimant completed his high school education and earned a bachelor's degree in business math education.  Claimant has worked in the past as a retail store manager, a cashier checker, a teller, a courtesy booth cashier/office manager, and a vault teller.  Claimant alleges an inability to work beginning May 1, 2016 due to limitations resulting from ischemic heart disease, depression, anxiety, PTSD, substance addiction, GERD, hypertension, and stroke.

## Procedural History

On December 8, 2016, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. ' 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On July 17, 2018, Administrative Law Judge ("ALJ") Doug Gabbard, II conducted a hearing in McAlester, Oklahoma.  On July 20, 2018, the ALJ entered an unfavorable decision.  On March 6, 2019, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential

4

evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) improperly weighing and rejecting the opinion of Claimant's treating physician; and (2) improperly rejecting the opinions of the reviewing state agency physicians evaluating Claimant's mental functioning limitations.

### Evaluation of the Treating Physician's Opinion

In his decision, the ALJ determined Claimant suffered from the severe impairments of ischemic heart disease status post heart attack, depression, anxiety, post-traumatic stress disorder ("PTSD"), and substance addiction disorder (alcohol and drugs). (Tr. 14). The ALJ concluded Claimant could perform light unskilled work which is simple, repetitive, and routine with simple, direct, and concrete supervision. Interpersonal contact with supervisors and co-workers should be incidental to the work performed, i.e., assembly work. The ALJ found Claimant should have only occasional face-paced work, should have not contact with the general public, and must be allowed to alternately sit and

5

stand every 20 minutes or so throughout the workday for the purpose of a brief postural change, but without leaving the work station. (Tr. 17).

After consulting with a vocational expert, the ALJ concluded Claimant was capable of performing the representative jobs of bench assembler and small product assembler, both of which were determined to exist in sufficient numbers in the national economy. (Tr. 22).  As a result, the ALJ concluded Claimant was not under a disability from May 1, 2016 through the date of the decision. (Tr. 23).

Claimant alleges that the ALJ failed to properly weigh the opinion of Dr. Theresa Farrow, Claimant's treating psychiatrist at the Carl Albert Community Mental Health Center.  Claimant was attended by Dr. Farrow on June 15, 2016 at which time he reported that he was "doing worse again" with his depression "maybe a little better" but his anxiety was worse.  He stated that he tried to work several times, but his panic attacks were worse.  Claimant told Dr. Farrow that he quit his job because of his anxiety and panic.  He stated that he slept "pretty good" and his appetite was good.  He had no hallucinations, delusions, or suicidal/homicidal ideations.  (Tr. 450).

On July 21, 2016, Claimant reported worsening depression and anxiety with his panic attacks better. His sleep was "poor" but appetite good. He admitted to hearing voices off and on (mostly "on") since he was 14. Claimant stated that the voices were loud lately with some command hallucinations, no delusions or homicidal ideations. He reported having suicidal thoughts of throwing himself in front of a train. Dr. Farrow recorded that she was not sure if Claimant could keep himself safe until the next day, but no state beds were available. (Tr. 447). His condition was found to be worsening and he continued on medication. (Tr. 448).

On August 6, 2016, Claimant reported that he was "doing much better. His anxiety, depression, and panic attacks were better, his sleep and appetite were both good. Claimant still experienced some auditory hallucinations but they were fewer and they did not tell him to kill himself any more. He experienced no delusions or suicidal/homicidal ideations. (Tr. 549). He continued on his medications. (Tr. 550).

On June 8, 2017, Claimant sought treatment from Dr. Farrow. He found Claimant was doing better overall. His depression, anxiety, and panic attacks were better but still significant. His sleep was not as good with more nightmares. He experienced no

7

delusions or suicidal/homicidal ideations but still had occasional mild hallucinations which were manageable. Dr. Farrow noted Claimant had mouth movements with his jaw constantly working from side-to-side. (Tr. 535). Dr. Farrow continued to treat Claimant with medication. (Tr. 536).

On July 25, 2017, Claimant reported to Dr. Farrow that he was doing worse. His depression, anxiety, and panic attacks were worse with his medication, Trintellix. Claimant's sleep was OK and his appetite decreased with some nausea. Claimant still reported no delusions or suicidal/homicidal ideations. He had occasional mild hallucinations which he still found to be manageable. His mouth movements continued which he thought to some extent worsened since he started on Trintellix. Dr. Farrow discontinued the Trintellix and continued on other medications. (Tr. 598-99).

In January of 2018, Claimant was found to have suffered a single cerebra vascular accident or stroke. The condition had caused a headache and slurred speech with jumbled words. (Tr. 611, 641-43, 649).

On April 30, 2018, Dr. Farrow completed a Mental Capacity Assessment source statement on Claimant. She found Claimant had

an "extreme" limitation in the functional areas of the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary limits; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday or workweek "without interruptions from psychologically based symptoms"; the ability to perform at a consistent pace with a one hour lunch break and two 15 minutes rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to travel in unfamiliar places or use public transportation.  The completed form defined an "Extreme" limitation as "[t]here is major limitation in this area. There is no useful ability to function in this area." (Tr. 636-37).

Dr. Farrow also concluded Claimant had "marked" limitation in the areas of the ability to carry out detailed instructions; the ability to sustain an ordinary routine without special supervision; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in the work

9

setting. The form used by Dr. Farrow defined a "Marked" limitation as "[t]he individual has limitations functioning in this area, two thirds of an eight hour work day." (Tr. 636-37).

Dr. Farrow specifically noted on the form that Claimant would have more than four or five absences from work on average "if he could even make a day." (Tr. 636).

In the area of the form where a description of medical/clinical findings is required to support the assessment, Dr. Farrow stated, "Pt. continues with hallucinations & severe depression, anxiety, & panic attacks." In setting out whether the use of alcohol impacts her conclusions, Dr. Farrow wrote, "He is in sustained, prolonged remission" and Claimant has the ability to voluntarily control the use of alcohol and other substances. (Tr. 637).

On a separate form, Dr. Farrow stated that she had been treating Claimant since February 9, 2016 but that Claimant's limitations had existed since "at least 2014." She also stated that her opinions were based upon direct observation/treatment (both inpatient and outpatient), historical medical records, clinical testing, patient reporting, Dr. Farrow's experience and background, and counseling/therapy records. (Tr. 638).

Dr. Farrow also authored a letter dated April 30, 2018 in which she stated that she was writing the letter to address some concerns which might stem from her recommending Claimant for Social Security Disability benefits. After citing her education and experience, Dr. Farrow stated that she believed patients should work if they are able and that it was "rare for me to recommend anyone for disability." She estimated she recommended about two percent of her patients. Dr. Farrow wrote that she required her patients to be treated by her for two years, be compliant with medications and therapy, be working to get better, and not be abusing alcohol or illicit drugs. Her only exception is if a patient is demented from Alzheimer's or Parkinson's or psychotic from schizophrenia to the point that they will not be able to regain the ability to work even with medication. (Tr. 639).

The ALJ gave Dr. Farrow's opinion "little weight", justifying his decision as follows:

> I have also considered the medical source statement (mental) from Dr. Farrow, who opined the claimant had several areas of marked and extreme limitations in mental functioning due to hallucinations, severe depression, anxiety, and panic attacks (Exhibit 10F). She also submitted a self-serving letting (sic) trying to buttress her opinion. Although Dr. Farrow treats the claimant, her opinion is inconsistent with her own treatment records showing the claimant's depressive and anxiety disorders responded well to psychotropic

11

>  medication management. While there is evidence of repeat psychiatric hospitalizations, these exacerbations coincided with periods of alcohol use and stressors related to relationship issues. The claimant's GAF scores were in the mild to moderate range of severity and his mental status examinations documented appropriate behavior, intact memory, generally intact concentration, adequate attention and only occasionally depressed mood and mild hallucinations. Accordingly, the record does not support the claimant's allegations of disabling mental symptoms and Dr. Farrow's marked and extreme limitations despite treatment. For these reasons, I give little weight to Dr. Farrow's opinion.

(Tr. 21).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

12

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's rejection of Dr. Farrow's opinion is largely based upon his stated beliefs which were contradicted or not supported

13

by the record. He first states in general fashion that the opinion contained in the medical source statement was not supported by Dr. Farrow's treatment records, which he characterized as showing Claimant responding well to medication. In fact, the record as recited herein demonstrates that Claimant was improving and then subsequently regressing in his depression, anxiety, and panic attacks. (Tr. 539-42, 544-45, 598). The ALJ's generalized conclusion that Claimant's conditions "responded well" to medication does not reflect the reality of the record.

Additionally, the ALJ's conclusion that Claimant's inpatient hospitalizations coincided with alcohol use and stressors related to relationships is also not supported by the medical record. Nothing in the hospitalization in July of 2016 reflected either alcohol abuse or relationship stressors. Instead, the record indicated he was admitted due to command hallucinations, hearing voices, and entertaining suicidal thoughts and plans. (Tr. 447, 552-55). While Claimant was diagnosed with Alcohol Use Disorder, Moderate and Cannabis Use Disorder, no medical professional has attributed Claimant's mental problems to either alcohol or relationship stressors and the ALJ certainly did not cite to any such evidence. Indeed, Dr. Farrow specifically found in her medical source statement that he was able to control his alcohol

14

use. (Tr. 637).

The ALJ also relies upon Claimant's GAF scores to reject Dr. Farrow's opinion. However, the scores upon which he relies setm from a time prior to his onset date. (Tr. 337-38, 399). GAF scores after his onset date were 32 and 50, which indicate impairment in functioning. *See*, American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Ed. 1994). Claimant's GAF scores do not provide a basis for the ALJ's conclusions.

The ALJ's generalized and unsupported summary of Claimant's mental health treatment records are also inaccurate. He stated Claimant demonstrated "generally intact concentration" and "only occasionally depressed mood and mild hallucinations." As has been cited extensively, Claimant's depressive mood and anxiety waxed and waned during his treatment. His concentration was only characterized as "fair." (Tr. 447-48, 450-51, 535-36, 546-47, 549-50, 557, 598-99).

The ALJ also failed to proceed through the necessary analysis under Watkins to ascertain whether Dr. Farrow's opinion was entitled to controlling weight. As stated, his conclusions regarding the reduced weight he gave the opinion were not supported by the record. As a result, the ALJ shall re-evaluate Dr. Farrow's

15

opinion on remand, taking into consideration the Watkins factors.

## Consideration of State Agency Mental Health Opinions

Claimant also contends the ALJ erroneously rejected the opinions of the state agency physicians who evaluated Claimant's mental health.  Dr. Edith King determined that Claimant was "markedly limited" in the ability to understand, remember, and carry out detailed instructions and ability to interact appropriately with the general public.  She also found Claimant was "moderately limited" in the areas of the ability to maintain attention and concentration for extended periods, ability to work in coordination with or in proximity to others without being distracted by them, and ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 74).  Dr. King concluded Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could not relate to the general public.  Id.

Dr. William Farrell also concluded that Claimant was "markedly limited" in the ability to carry out detailed instructions and ability to interact appropriately with the general public.  He also found Claimant was "moderately limited"

16

in the areas of the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods, ability to work in coordination with or in proximity to others without being distracted by them, and ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  He concluded that Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could not relate to the general public.  (Tr. 89).

The ALJ stated that he gave these opinions "substantial weight" because he found them "consistent with the record evidence (i.e. treatment history, his presentation at times during visits, use of medications, and his history of anxiety, depressive, and PTSD symptoms)."  He did extend an additional limitation in the RFC of only "incidental contact with supervisors and coworkers" in the RFC.  (Tr. 21).  He made no mention of the marked limitation on Claimant's ability to understand, remember, and carry out detailed instructions found by Dr. King or the marked limitation on Claimant's ability to carry out detailed instructions found by Dr. Farrell.

The ALJ is required to consider all medical opinions, whether

17

they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). Moreover, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

The ALJ's failure to consider the marked limitations identified by the state agency physicians must be rectified on remand. The ALJ shall consider these additional limitations and provide reasoning for any rejection of the physicians' opinions.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. ' 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** to Defendant for further proceedings.

18

IT IS SO ORDERED this 28th day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE